MARÍA ECHEVARRÍA, viuda de SUBIRÁ, CONCEPCIÓN SUBIRÁ y su esposo MANUEL A. FRAU y PROVIDENCIA SUBIRÁ y su esposo SALVADOR PERELLÓ, demandantes y apeladas, *v.* RAFAEL SAURÍ, demandado y apelante.

No. 4169.—*Visto:* Junio 22, 1927 y Mayo 23, 1928. *Resuelto:* Julio 28, 1928.

*L. Yordán Dávila, R. Pérez Marchand* y *J. Tous Soto,* abogados del apelante; *Henry G. Molina.* abogado de las apeladas.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El alegato de la parte apelante comienza así: "Este es un procedimiento de *injunction* para recobrar la posesión material, que los demandantes establecieron mediante escrito de demanda jurada de acuerdo con las leyes especiales No. 43 de 1913 y No. 11 de 1917, vigentes sobre la materia."

En la demanda se alega que los demandantes son dueños de la hacienda "Isabel" y el demandado de la hacienda "Santa Cruz." Ambas haciendas colindan, estando separadas en algunas partes por el llamado camino vecinal de "Bucaná" y en otras por callejones en los que existen zanjas que se utilizan para el riego de las tierras. Se exponen cinco diferentes causas de acción. Por la primera se atribuye al demandado haber despojado a los demandantes de cierta parcela de terreno situada en la colindancia Oeste de la hacienda "Isabel" con el camino "Bucaná"; por la segunda, haber colocado una puerta en el camino "Bucaná" y en su consecuencia haber privado a los demandantes del uso de dicho camino; por la tercera haber despojado a los demandantes de otra faja de terreno de doce piés al frente Oeste en colindancia con el camino "Bucaná", doce pies al fondo Este con la hacienda "Isabel" y 1156 pies de largo en colindancia al Norte con la hacienda "Isabel" y al Sur con la hacienda "Santa Cruz" y haberles perturbado en el uso de la zanja que en dicha faja existe; por la cuarta haber levantado cierta cerca que se encontraba en una guardarraya de las haciendas "Isabel" y "Santa Cruz," y por la quinta el haber tapado la zanja existente en un callejón más al Norte de los sitios mencionados.

La súplica de la demanda es muy elaborada. Se pide la adopción de medidas específicas en relación con cada causa de acción. Luego se dice:

"Se suplica a la Corte además se sirva fijar fecha para el juicio del presente caso, de acuerdo con lo establecido en la Sec. 3 de la Ley No. 43, aprobada en 13 de marzo, 1913, sobre procedimientos para recobrar la posesión de propiedad inmueble, y al efecto que dicho señalamiento se haga dentro de los quince días de la radicación de esta demanda, o a más tardar el día 27 de diciembre, 1926, a las 9 a. m."

El propio día en que la demanda fué archivada, 10 de diciembre de 1926, la Corte de Distrito proveyó como sigue:

"Vista la demanda en el presente caso y lo establecido en la

Sec. 3 de la Ley No. 43, aprobada en 13 de marzo de 1913, se señala la sesión del día 20 de diciembre, 1926, a las 9 de la mañana. para el juicio del presente caso, debiéndose emplazar al demandado inmediatamente para que comparezca en dicha fecha.''

Además de pedirse como consecuencia de la segunda causa de acción que se ordenara al demandado que destruyera el portón colocado por él a través del camino ''Bucaná'' y que se abstuviera de obstruir el paso de los demandantes, sus agentes o empleados por el dicho camino, se suplicó la expedición de un auto de *injunction pendente lite* y a este último efecto se presentó una petición separada, acompañada de varios *affidavits,* que termina así:

''. . . . y ordenar a dicho demandado Rafael Saurí a mostrar causa ante esta corte el mismo día y hora señalado para el juicio del caso, por qué dicho 'restraining order' no debe ser convertido en *injunction pendente lite* o preliminar, en lo que se resuelve este caso sobre sus méritos, o sea hasta que se dicte sentencia final.''

Y el mismo día 10 de diciembre de 1926 la corte expidió la orden de *injunction* solicitada, fijando el 20 de diciembre, señalado para el juicio, para la mostración de causa.

Comparecieron las partes en efecto el veinte de diciembre de 1926. El demandado presentó un escrito contentivo de las siguientes excepciones previas: 1, que los demandantes no tienen capacidad legal para demandar; 2, que varias acciones han sido indebidamente acumuladas; 3, que la demanda es ambigua y dudosa; 4, que la tercera causa de acción es ininteligible, y 5, que la demanda no aduce hechos suficientes para constituir una causa de acción.

. Consta que las excepciones se discutieron ampliamente por los abogados de las partes y que la corte primeramente declaró con lugar la segunda excepción. Intervino el abogado de los demandantes explicando que la dicha segunda causa de acción había sido redactada en vista de la ley de 1906, bajo la teoría de que podían acumularse una acción de *injunction* con una de recobrar la posesión y la corte dejó en suspenso su decisión. Por la tarde, al reanudarse la sesión,

reconsideró su resolución y declaró sin lugar la excepción. Todas las demás excepciones habían sido declaradas sin lugar en la sesión de la mañana.

La parte demandada tomó excepción a la resolución de la corte y le pidió que la convirtiera en sentencia definitiva. Así se hizo. Y de la sentencia dictada es que se apela.

Sucedió que al día siguiente la propia parte que pidió que se dictara la sentencia solicitó que se dejara sin efecto y se admitiera su contestación. La corte se negó y de la negativa también se ha apelado.

Tuvieron lugar otros procedimientos con motivo de haber pedido el demandado que se le permitiera garantizar mediante fianza los perjuicios que pudiera causar y se levantara la orden de *injunction pendente lite*. La corte no accedió, pero la fianza de mil dólares que habían prestado los demandantes para obtener el *injunction* preliminar fué elevada a diez mil.

Para un mejor entendimiento de lo ocurrido en el litigio y de la cuestión más importante envuelta en el mismo, parece conveniente transcribir del alegato de la parte apelada lo que sigue:

"La demanda, en cuanto a las causas de acción 1, 3, 4 y 5, es sencillísima y no requirió mucho estudio de parte del abogado que suscribe, quien la redactó, porque siguió al pie de la letra la repetida jurisprudencia de este Honorable Tribunal con respecto a acciones sobre *injunction* para recobrar o retener la posesión (Leyes No. 43 de 1913. y No. 11 de 1917) y especialmente lo dicho en el caso de *Serrano* vs. *Sucn. Santos,* 24: 175, en la página 183, a saber:

" 'Desde el momento en que uno de los colindantes no estuvo conforme no pudo el otro fijar por sí solo la línea divisoria, ya que a nadie es lícito tomarse la justicia por su mano, sino que debe acudirse a los tribunales para conseguirla, "ca por aquesto son puestos los judgadores en los lugares, porque los omes alcancen derecho por mandamiento dellos, e non lo puedan por ellos mesmos fazer," como dice la ley 14, tít. 10 de la Partida 7a.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Ahora, volviendo a explicar la teoría de la demanda, con relación especialmente a la segunda causa de acción. Aquí tuvimos

nuestra dificultad. La cuestión que nos preocupaba era en cuanto al remedio o forma de la acción para abrir, de momento, y tumbar en definitiva, el portón o puerta que cerraba el "Camino de Bucaná." Era precisamente lo que más interesaba a los demandantes de momento, por los motivos alegados en los párrafos 5, 6 y 7 de la segunda causa de acción, y por cuya razón presentaron la petición de *injunction pendente lite* a que nos remitimos. Era urgente para los demandantes utilizar dicho camino para transportar por el mismo, en la cosecha que había de comenzar poco después de radicada la demanda, las cañas de la pieza llamada 'Salichs' a la romana en la vía férrea que quedaba al otro lado (hacia el Norte) del portón colocado por el demandado a través del 'Camino de Bucaná,' precisamente para perjudicar y molestar a los demandantes en el referido uso que necesitaban hacer del mismo, cuyo uso no molestaba al demandado en manera alguna, como no había molestado a los anteriores dueños de la 'hacienda Santa Cruz' durante los numerosos años que los demandantes lo habían utilizado al mismo fin. Estudiamos todas y cada una de las decisiones de este Honorable Tribunal con respecto a las leyes sobre 'injunctions' para recobrar y retener la posesión (de 1913 y 1917), e hicimos un digesto de las mismas, el cual acompañamos a este alegato para formar parte del mismo. La penúltima decisión publicada hasta esa fecha (diciembre, 1926), *Central Victoria* vs. *Hernández*, 35: 613, podría ser interpretada por la corte de distrito, superficialmente, al efecto de que la acción especial establecida por dichas leyes no correspondía a un propietario para retener o que no fuera perturbado en, la posesión o uso de un camino público con el cual colindaba su propia finca. Era y es nuestro criterio, al analizar esa decisión, que no afectaba a un caso como el presente, y se refería más bien a los hechos especiales en aquel caso, o sea de un camino *privado* dentro de la propiedad del demandado, cuyo camino no colindaba con ninguna finca de la demandante. Mientras que en el presente caso se trata de una finca *de los demandantes* para el debido uso y disfrute de la cual, desde luego, tiene derecho a entrar y salir por el camino público con el cual esa finca colinda. Luego, los actos alegados del demandado perturbaban a los demandantes en la posesión y disfrute *de su propia finca,* de la cual tenían la posesión absoluta, aparte de que les perturbaba en la posesión o uso del propio 'Camino de Bucaná' en relación con su finca que colindaba con el mismo. Oportunamente haremos un análisis de la decisión en el caso de la *Central Victoria* vs. *Hernández,* con objeto de demostrar que esa decisión no es contraria a esta contención.

"Pero previendo la posibilidad de que los tribunales, y especialmente la corte de distrito, no aceptaran esta teoría, se redactaron las alegaciones de la segunda causa de acción para que la misma pudiera ser sostenida de acuerdo con la Ley sobre Injunctions Ordinarios (de 1906). Véase especialmente lo alegado en el párrafo 7 de dicha causa de acción. Se nos ocurrió, desde luego, que el demandado insistiría en que esa acción (segunda causa sobre injunction ordinario) no podía ser acumulada con otras sobre injunction para recobrar o retener la posesión, pero las circunstancias especiales del presente caso son tales que sería sumamente difícil trazar una línea divisoria entre las dos acciones. Véase lo que se dijo por este Honorable Tribunal en el caso de *Ferrer* vs. *Gutiérrez*, 28: 460, en la página 466, a saber:

" 'Al comentar este artículo (C.C. 448) hemos tenido ocasión de decir antes que "este precepto del estatuto y la historia de los interdictos mediante los cuales bajo el anterior procedimiento se aplicaron los principios que le informan bastarían en este país para sancionar, de no acelerar, *la moderna tendencia a ampliar más bien que restringir* la clase de casos en que intervendrán las cortes de equidad para impedir la realización de una amenaza de allanamiento de propiedad ajena (trespass)." *García* vs. *Rodríguez*, 27 D.P.R. 309.' (Bastardillas nuestras).

"Ambas acciones son de naturaleza 'equitativa,' es decir, 'in equity.' Si el caso fuera a Boston, por ejemplo, indudablemente sería por apelación y no por 'writ of error.' Y es una doctrina bien establecida de que 'Equity delights to do justice and not by halves.' 21 C. J. 198, Sec. 187, donde se dice:

" 'The principle of the maxim embraces the well-established doctrine that when equity once acquires jurisdiction it will retain it so as to afford complete relief.'

"En honor a la verdad, nosotros no creíamos indispensable alegar separadamente las cinco causas de acción, porque tratándose de una acción equitativa, y solicitándose el remedio exclusivamente equitativo de injunction, (y las leyes de 1913 y 1917 hablan específicamente de 'injunction') entendemos que hubiera sido suficiente el exponer todos los hechos y pedir a la corte una sola sentencia o decreto (decree) ordenando al demandado a tumbar los portones y no continuar entorpeciendo a los demandantes en el disfrute de su finca, tal y como la venían disfrutando en y antes de diciembre 12, 1925. Y si tenemos razón en esto, seguramente la demanda no es defectuosa como consecuencia de haber expuesto en cinco distintas causas de acción relacionadas cada una con una parte determinada

de la colindancia, los actos violentos o ilegales del demandado que dieron lugar a la demanda.

"En cuanto a la segunda causa de acción, repetimos que los hechos sobre los cuales versa, son absolutamente idénticos a los hechos envueltos en la primera causa de acción, porque una parte de la puerta que obstruye el 'Camino de Bucaná' se encuentra en la finca poseída por los demandantes y forma la base de la parcela de terreno en forma triangular descrita en la primera causa de acción."

Las excepciones primera y segunda, se formularon así:

"1. Que en el presente caso los demandantes no tienen capacidad legal para demandar en solicitud de apertura de un camino que se dice y alega ser un camino municipal, porque, aceptando los hechos, sería ésta una acción que correspondería a la colectividad Municipio de Ponce, toda vez que se funda en la alegada servidumbre de utilidad pública y comunal, y no puede ser el remedio de injunction de la Ley No. 43 de 1913, según enmendada por la Ley 11 de 1917, que es de iniciativa privada, tomado para el ejercicio de dicha acción.

"2. Que varias acciones han sido indebidamente acumuladas en este caso, porque los demandantes pretenden que se les restablezca en una parcela de terreno que describen en la Primera causa de acción de acuerdo con las leyes de 1913 y 1917 sobre Injunction, y proceden a describir los hechos constitutivos de la perturbación mediante alegaciones que corresponden a la acción que debe ejercitar en todo caso la colectividad Municipal de Ponce para la apertura del llamado Camino de Bucaná como servidumbre de utilidad pública municipal."

A no ser por las manifestaciones del abogado de los demandantes en el acto de la vista a que ya nos hemos referido, la cuestión de si estaba envuelta o no en este caso la ley general de injunction de 1906, no surgiría de las excepciones previas que anteceden.

Si se tratara de sostener que dentro de un solo pleito era posible tramitar a la vez un *injunction* especial para recobrar o retener la posesión de acuerdo con las leyes de 1913 y 1917 y un pleito ordinario de injunction de conformidad con la ley de 1906, tendríamos que resolver que era imposible, porque no cabe amalgamar los trámites sumarios y peculiares del primero con los amplios del segundo.

Pero esto no quiere decir que instituido un pleito de injunction para retener o recobrar la posesión de acuerdo con las leyes de 1913 y 1917, no pueda solicitarse y obtenerse en él, en auxilio de la jurisdicción de la corte, una orden de la naturaleza de un auto de *injunction pendente lite.*

Siendo esto así, la verdadera cuestión a resolver es si las cinco causas de acción ejercitadas en la demanda pueden serlo de acuerdo con las repetidas leyes de 1913 y 1917.

Con respecto a cuatro de ellas, ni siquiera se pone en tela de juicio que pueden serlo. Es con respecto a la segunda, la que se refiere al Camino Bucaná, que surge la controversia.

El demandado y apelante sostuvo y sostiene que los demandantes y apelados no tienen personalidad para ejercitar dicha acción que corresponde al Municipio de Ponce y que tampoco podría acumularse una acción para recobrar la posesión de un camino público a otras para recobrar la posesión de propiedad privada.

Conocemos lo que dicen los apelados en su alegato. Refiriéndose a la exacta cuestión en controversia, sostienen además:

"Esta es una cuestión absolutamente nueva y peculiarísima y recordamos al Honorable Tribunal que estamos en el amplio camino de la equidad y sobre todo que,

" 'Few tribunals are so unfettered by precedent, or in matters not governed by statute, so free to follow the dictates of conscience and common sence as are the courts of this Island. To build, upon the fundamental principles so often found at botton in both American and Spanish jurisprudence, a composite structure embodying the best clements of the two great systems and, in so far as may be, unmarred by the defects of either, is our peculiar privilege if we will but grasp the opportunity that lies before us.' *Vega Baja* vs. *Smith,* 27 P.R.R. 587."

Y en una nueva vista celebrada, insistiendo en su teoría, aportaron como jurisprudencia dos sentencias de la Corte Suprema de España y varias citas del volumen de Ruling Case Law que se refiere a Caminos.

La primera sentencia de la Corte Suprema de España

citada, es la de 31 de diciembre de 1879 y aparece en 42 J. C. 523. Se trata de un caso de interdicto de recobrar. D. Manuel Venero expuso que se encontraba en posesión hacía lo menos 35 años sin interrupción de una servidumbre de carro que desde su casa conducía a la carretera general cruzando la posesión de un Sr. Fernández y que éste lo despojó de su dicha servidumbre mandando cortar una zanja y realizando otros actos que se especifican, y solicitó ser amparado en su derecho. Las cortes lo ampararon en efecto, y Fernández llegó hasta el Supremo alegando como error que se había infringido la Ley de Enjuiciamiento Civil, artículo 724, puesto que se había estimado la procedencia de un interdicto que no reune el primero de los requisitos exigidos por dicho artículo, ya que el interdicto sólo se da contra el despojante de cosas pero no de derechos, y el Supremo resolvió:

"Que bajo el nombre de posesión se entiende comprendida la cuasi posesión para los efectos de los interdictos de recobrar, en los cuales se resuelve una cuestión de orden público que del propio modo se afecta privando a uno por mano propia de la cosa corporal que posee, como de un derecho de servidumbre que ejercita o cuasi posee."

Y en la segunda, que es la de 11 de julio de 1881, 47 J. C. 100, ratificando la anterior doctrina, se estableció:

"Que conforme a la jurisprudencia constante del Tribunal Supremo, fundada, entre otras leyes, en la 1ª, tít. 3º, Partida 3ª, el interdicto de recobrar es procedente siempre que se prive a cualquiera de cosas muebles o raíces, o del ejercicio de un derecho; pues que resolviéndose en esta clase de juicios sumarísimas cuestiones de orden público, lo mismo se afecta privando a uno con violencia o clandestinamente de una cosa corporal que poseía, como de un derecho de que cuasi poseía."

Las citas de Ruling Case Law son al efecto de demostrar los derechos que se tienen por todas las personas al uso y disfrute de los caminos públicos y especialmente por los propietarios de los predios que tienen salida por ellos. 13 R. C. L. 138, 139, 142 y 231.

No es posible dejar de reconocer la fuerza de los razonamientos del apelado y de la jurisprudencia que invoca.

Todos los antecedentes tienden a demostrar que los antiguos interdictos, hoy *injunctions* para retener o recobrar la posesión, envuelven una cuestión de orden público que exige una rápida resolución que no prejuzgue los derechos definitivos pero que fije la condición actual de modo tal que garantice el disfrute de lo que se posee o de lo que se poseía dentro del breve término de un año.

Aceptando como es necesario aceptar la certeza de los hechos alegados en la demanda, se encuentra que el derecho a la posesión de las otras fajas de terreno a que se refiere está tan íntimamente enlazado con el derecho a la cuasi posesión del llamado camino vecinal de Bucaná, que no puede obtenerse el restablecimiento de la situación de hecho a que se aspira sin comprender dentro de la acción el camino. Parte del portón puesto en el camino está en tierras cuya posesión se alega que corresponde a los demandantes. Y si la obstrucción partió del demandado y si no se va a resolver en definitiva ninguna cuestión de título, ¿por qué no puede ventilarse todo dentro del procedimiento sumario para recobrar la posesión? Con derecho o sin derecho, es lo cierto que se alega que los demandantes estaban en la cuasi posesión del camino y que el demandado le arrebató esa cuasi posesión. No vemos que sea necesaria la intervención del municipio, dueño del camino, para dilucidar la cuestión de posesión surgida únicamente entre las partes.

Es cierto que la servidumbre que dió origen a la primera sentencia del Tribunal Supremo de España que se ha citado era por dentro de una finca privada, pero se trataba de una servidumbre de carro y el hecho de la perturbación por parte del demandado en aquel y en este caso es igual, pudiendo aplicarse en tal virtud la misma regla. Fuera del municipio o fuera del propio demandado el camino en cuestión, lo cierto es que se alega que el demandante estaba en la cuasi posesión del mismo, usándolo para transitar y conducir los pro-

ductos de su finca, y que el demandado lo cerró construyendo el portón de que se ha hecho mérito, y como pide amparo para su dicha posesión o cuasi posesión, debe obtenerlo de la corte, pudiendo valerse para ello de los trámites sumarios del *injunction* o interdicto que autorizan las leyes de 1913 y 1917.

Las tres restantes excepciones carecen de mérito. La demanda no es ambigua, ni ininteligible y aduce hechos suficientes. Las cuestiones suscitadas se plantean con claridad. Sometidas a prueba al dictarse la sentencia detallada que procede en casos de esta naturaleza, basta examinarla para concluir que la demanda proporcionó la base necesaria para llegar hasta el fin del litigio sin dificultad.

Resta sólo considerar si la corte de distrito debió o no haber dejado sin efecto la sentencia que dictara a solicitud del propio demandado, permitiendo a éste radicar la contestación que presentara.

En la moción del demandado archivada al efecto se alegó lo que sigue:

"Que en el día de ayer diciembre 20 de 1926, se celebró la vista de este caso y, a solicitud del demandado, se dictó una sentencia condenatoria por las excepciones previas sometidas que fueron las únicas alegaciones radicadas por la parte demandada.

"Que esta sentencia todavía no ha sido notificada al demandado ni a sus abogados; pero el demandado ya está cumpliendo el entredicho o 'restraining order' de esta corte sobre el particular.

"Que la razón poderosa que indujo a los abogados del demandado a solicitar en nombre y representación de éste que se convirtiese en sentencia la resolución sobre las excepciones previas fué la de dar a las partes la más amplia y cómoda oportunidad para un posible entendido que pusiese término a la enojosa situación creada por el litigio, sin entrar en consideraciones de prueba que pudiesen lastimar y mortificar a las partes litigantes más allá de lo de hasta entonces ocurrido. Y que a este fin fueron instruídos los abogados suscribientes por el demandado en bien de la armonía y con el único propósito de facilitar los términos de una transacción que se negociaba entre las partes y que todavía en el momento de entrar en juicio se discutía por las partes y amigos interesados.

"Que esta transacción ha fracasado y los abogados suscribientes · estiman su más alto deber y un mandato ineludible de la ética profesional comparecer ahora ante la Honorable Corte y, en bien de la justicia y en defensa de los sagrados intereses que le fueron confiados para su defensa, solicitar respetuosamente de la Honorable Corte de Distrito de Ponce que permita a los abogados del demandado radicar en nombre y representación de éste una contestación a todas y cada una de las causas de acción y alegaciones que contiene la demanda en este caso, cuando todavía la sentencia anunciada y dictada en corte abierta sobre las excepciones previas no le ha sido notificada en forma al demandado ni está unida a los autos del pleito ni es definitiva todavía."

Señalado el 3 de enero, 1927, para la vista de la moción, comparecieron ambas partes y tuvo lugar una amplia discusión, negando la corte lo solicitado.

La corte razonó su resolución sosteniendo que, como cuestión de ley, la sentencia dictada era definitiva, careciendo de discreción para dejarla sin efecto, citando los casos de *The American Railroad Company of Porto Rico* v. *Quiñones,* 17 D.P.R. 261, y *Pescay* v. *Fernández,* 28 D.P.R. 791, y agregó:

"De manera que la corte cree y es de opinión que de acuerdo con esta jurisprudencia, como cuestión de ley, no tiene la corte discreción dentro del artículo 140 ni tiene derecho alguno el demandado que ha adoptado una actitud como la que ha adoptado en este caso, para que se abra de nuevo el caso después de no haber querido contestar y de haber solicitado que se dictara sentencia por las excepciones previas; y tomando en consideración además, que se trata en este caso de un injunction bajo la ley especial número 43 de 1913, según fué enmendada por la ley número 11 de 1917 en que se dispone especialmente por esta ley que el juicio del caso se llevará a efecto dentro de los quince días y estipulando la ley que ese mismo día del juicio se discutirán todas las mociones, excepciones y todas las cuestiones legales; es un procedimiento rapidísimo que establece la ley, de manera que esto hace todavía más fuerte la posición de los demandantes al oponerse a que se declare con lugar la moción del demandado; el demandado tuvo oportunidad de contestar, es más, debió contestar el día del juicio y al mismo tiempo presentar sus excepciones, y dice el Supremo que esa sentencia es final y definitiva, que no hay discreción legal por el artículo 140,

y de existir discreción legal, en el otro aspecto más genérico, en cuanto a que la corte desee en determinados casos ejercitar su discreción, la corte cree que en este caso, por la forma en que se ha venido desarrollando, no debe ejercitarla.''

Dejando a un lado la importante cuestión de si la resolución de la corte era o no apelable o si puede ser o no considerada en una apelación de la sentencia, y sin tratar de decidir si la jurisprudencia citada priva o no a la corte de su discreción para pesar las circunstancias que concurran y en un caso verdaderamente apropiado dejar sin efecto la sentencia, opinamos que de la propia moción del demandado apelante no surge una buena causa para el ejercicio de la discreción.

No se concibe que pudiera ocurrir lo que se dice que ocurrió. Si se estaba en la disposición de ánimo que se indica, lo lógico hubiera sido que ambas partes hubieran pedido la posposición del juicio una vez resueltas las excepciones.

Basta leer la transcripción de los autos para penetrarse del encono existente entre las partes que se refleja en la actitud de sus propios abogados en los diferentes incidentes que surgieron. La corte sentenciadora que pudo observar esa situación mejor que nosotros, debió sentir con más fuerza la extrañeza de la causa alegada.

La parte demandada quedó obligada por sus propios actos. La parte demandante estaba lista con sus testigos ante la corte para presentar la prueba de sus alegaciones. El demandado prefirió venir al Supremo a sostener su caso sobre cuestiones de ley. El sabía que su actitud envolvía la aceptación de la certeza de los hechos alegados en la demanda y no puede quejarse. Tuvo su día en corte. Escogió su camino. Y todo cuanto suscitó ha sido estudiado y resuelto.

*Deben confirmarse la sentencia y la resolución recurrida.*

El Juez Asociado Sr. Hutchison está conforme con la sentencia y también con la opinión menos en la parte que indica que no pueden acumularse en un solo pleito un procedimiento de *injunction* para recobrar la posesión de acuerdo con las

leyes de 1913 y 1917 y un pleito ordinario de *injunction* de conformidad con la Ley de 1906.